# O'Hara and Wife *versus* Dilworth and Chambers.

1. A guardian, by order of the Orphans' Court, sold land of three female wards, in which their mother had dower; there was evidence of a family arrangement before sale that it should be bought for F., a married ward, at less than its value, and the mother would release her dower; the land was sold to the husband, the deed made to him because the wife was a minor, and he promised to convey to her; he gave a mortgage for the deferred payments; the wife, after coming of age, received her share of the mortgage from a purchaser of the husband's title, under proceedings in bankruptcy. *Held* not to be sufficient to submit to the jury on the question of a resulting trust in the wife.

2. Five months after the sale the husband conveyed to trustees for the separate use of the wife, and the deed was recorded. *Held*, sufficient to put purchasers under bankruptcy upon inquiry as to the title of the wife.

3. The wife with her husband afterwards executed a release to the purchasers. If her title were good under the trust deed the release did not pass it.

4. The wife having paid none of the purchase-money under the guardian's sale, and there being no fraud, the husband's promise being parol, a trust was not created under the Statute of Frauds.

5. Nixon's Appeal, 13 P. F. Smith 279; Seichrist's Appeal, 16 P. F. Smith 237, distinguished.

November 14th and 15th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county :* of October and November Term 1872, No. 95.

On the 7th of September 1871 Michael O'Hara and Frances A., his wife, for her use, brought an action of ejectment against

[O'Hara *v.* Dilworth.]

Joseph Dilworth and Alexander Chambers, for a lot of land in Liberty township, containing about 15 acres.

The cause was tried, May 23d 1872, before Sterrett, P. J.

The title to the land was in John McFarland, who died seised of the same in 1861, leaving a widow, Maria McFarland, and three minor children: Sarah D., afterwards married to A. M. Barr; Frances A. (plaintiff), afterwards married to Michael O'Hara, and Ada P. William Harrison was appointed guardian of the persons and estates of the minors. On the 17th of February 1867, Harrison, as guardian of these minors, sold the premises, by order of the Orphans' Court, and by deed, in which the widow joined, to pass her interest, conveyed the premises to Michael O'Hara for $14,937.50. On the same day O'Hara made a mortgage to Harrison, as guardian of Frances A. O'Hara, Sarah D. McFarland, and Ada P. McFarland, to secure $12,447.91, the deferred payment of the purchase-money, including the widow's share. For the remainder of the purchase-money, which was the hand-money, he gave his judgment-note for $2489.58. On the 10th of July 1866, O'Hara and wife conveyed the premises to William Harrison and Gilbert L. B. Fetterman, in trust for the separate use of Frances O'Hara, one of the grantors; this deed was recorded August 3d, 1866.

The defendants gave evidence from the records of the District Court of the United States for the Western District of Pennsylvania in Bankruptcy, that Michael O'Hara, on the 9th of November 1867, was adjudged a bankrupt, and J. G. MacConnell and J. M. Kennedy were duly appointed his assignees. On the 30th of May 1868 Harrrison was discharged from his trust under the deed from O'Harra. On the 23d of May 1868, the remaining trustee, with O'Hara and wife, conveyed the premises to the assignees in bankruptcy: A. M. Barr was afterwards appointed guardian of Frances A. O'Hara, in the place of William Harrison, and on the 14th of June 1869, by order of the Circuit Court of the United States, on the complaint of the assignees that the trust deed for Mrs. O'Hara was fraudulent, Michael O'Hara and Frances A. his wife, and Barr as guardian, executed a deed for the premises to MacConnell and Kennedy, the assignees. On the 31st of July 1869 the assignees, in pursuance of a sale made by them and confirmed by the District Court of the United States, conveyed the land to Dilworth and Chambers for $23,059.81, subject to the mortgage from O'Hara to Harrison.

Frances O'Hara arrived at full age on the 24th of August 1869, and on the 25th she, with her husband, executed a quit-claim deed of the premises to Dilworth and Chambers, the defendants.

The defendants gave evidence that O'Hara had been one of the firm of O'Hara & Robinson, that on the 10th of July 1866, when the conveyance was made by O'Hara in trust for his wife, that firm

[O'Hara *v.* Dilworth.]

was heavily in debt and was insolvent, and that the firm and O'Hara continued insolvent.

They gave evidence also that on the 25th of August 1869, the day the quit-claim deed was executed, J. M. Kennedy, on behalf of Dilworth and Chambers, paid by their checks to Mrs. O'Hara, in the presence of her husband, and with his consent, the sum of $2970.68, her share of the purchase-money of the land sold by her guardian and secured by the mortgage given by O'Hara to the guardian; and that both Mr. and Mrs. O'Hara signed a receipt for this sum on the margin of the record of the mortgage; that the quit-claim deed was prepared, and these proceedings had under the supervision and direction of N. P. Fetterman, Esq., who was of counsel with the O'Haras, and that the receipt was written on his dictation; the quit-claim deed was executed and in the hands of Mr. Kennedy at the time the checks of Dilworth and Chambers were given to Mrs. O'Hara.

The plaintiffs, in rebuttal, called Mrs. McFarland, the widow, who testified that when the premises were sold to O'Hara, at the Orphans' Court sale, he bought it for his wife, so that it should not go out of the family whilst she lived; that when witness executed the deed, O'Hara promised her that he would have it "fixed" for his wife; that the deed was not made then to Mrs. O'Hara, because she was not of age.

Mrs. Barr testified that it had been understood at the sale that the property was sold as Mrs. O'Hara's share; O'Hara did not want the deed made to himself, but their attorney advised that Mrs. O'Hara could not take the deed because she was not of age; an offer of a higher price was made, but Mrs. McFarland said she would not convey to any one but for Mrs. O'Hara.

G. Himmelwright testified that there was a family arrangement about the time of the sale, that the property should be sold to Mr. O'Hara for Mrs. O'Hara, and the family fixed $1000 per acre as the price that O'Hara was to give.

Mrs. O'Hara testified that it was understood in the family that this property was to be for her; her sisters gave it up to her to be a home for her, and the Orphans' Court sale was made so that she should get a good title.

Harrison, the guardian, testified that the sale was for Mrs. O'Hara; that it was understood she was to have that part, and Mrs. Barr the other part on the hill; that it was intended to be conveyed to her, but counsel advised that it could not be so done, because, being under age, she could not execute a mortgage; witness would not have sold the property, except for the understanding that O'Hara was buying for his wife.

O'Hara testified that he bought the property for his wife, and that the deed was made to him under the advice of counsel, because she was a minor. The price $1000 per acre was fixed by the

family before the sale, under the arrangement that the property was to be for Mrs. O'Hara.    At the time of the sale, witness considered himself worth $100,000, and did not suppose that the firm of O'Hara & Robinson was insolvent.

At the time Mrs. O'Hara executed the quit-claim deed he told her to do so, as he, and perhaps herself, would be put into jail; she said she would sign anything rather than go to jail.

There was evidence by A. M. Barr and Mrs. O'Hara, that the deed was executed by her against her will, under the fear that she would be imprisoned, by virtue of attachments under the bankruptcy proceedings, if she did not do so.

The parties respectively submitted a large number of points; those which raise the questions considered and decided by the Supreme Court are the following :—

By the plaintiffs :—

1.  If the jury find from the evidence that the family of Mrs. O'Hara procured the sale of the property in controversy, at No. 148 October Term of the Orphans' Court, for the purpose of giving said Mrs. O'Hara the property, and that at such sale Michael O'Hara bid it in for Mrs. O'Hara, and that the deed was made to him against his desire, but for temporary convenience, and that Mrs. O'Hara's mother joined in said deed only on the understanding that the property was to be passed to her daughter; that Michael O'Hara, within less than five months thereafter, made over said property according to the arrangement, for his wife, as set forth in the deed of trust of July 10th 1866, and did not pay for said property of his own means, but for the purchase-money gave security and lien on the land; then the said deed of trust was valid, and the property could not be taken by the creditors of Michael O'Hara, without Mrs. O'Hara making a legal transfer, by her own voluntary act, after full age.

2.  If the facts set forth in the foregoing point are as shown by the evidence, and the testimony of Mrs. McFarland, Mrs. Hummelright, Wm. Harrison, Mrs. Barr, Mr. and Mrs. O'Hara—which testimony is undisputed—then all the evidence of the indebtedness of Michael O'Hara, on the 10th of July 1866, or subsequently, so far as made out on this trial, would not invalidate the deed of trust of said July 10th 1866, and the jury should disregard the same.

9.  If the property was sold, and bid in on a family arrangement, as testified to by Wm. Harrison, M. O'Hara, and other witnesses, and the deed of trust was made pursuant thereto, there was a good consideration for said deed of trust, and the deed of trust must be held valid, unless it is shown affirmatively and clearly that it was made also with the purpose of defrauding creditors, that Mrs. O'Hara was party to such purpose, and that creditors were defrauded thereby.

[O'Hara v. Dilworth.]

12. As, at the time of the application, or petition to the Orphans' Court, for the sale of the real estate in controversy, the said Mrs. Frances A. O'Hara was then a married woman, the wife of M. O'Hara, who was responsible for her maintenance and education, which facts were not disclosed by said petition, that the order of sale, and all proceedings under it, were void, and the one-third interest of Mrs. Frances O'Hara, the plaintiff therein, was not divested by said sale.

13. The purchase by the husband, of the wife's property, under said proceedings, was a legal fraud upon the rights of the wife; and the husband, in law, held the one-third of the property so purchased in trust for the wife.

14. Where a husband purchases the property of his wife, at judicial sale, during coverture, and while the wife is a minor, even if he pays a full consideration therefor, yet he takes the title in trust for the wife, and neither he, nor his vendees, can set up title against her after she arrives at her majority.

These points were refused.

The defendants' first point which was affirmed was:—

The parol testimony offered by the plaintiffs to show title in Mrs. O'Hara, prior to the deed of July 10th 1866, is insufficient for that purpose.

In the conclusion of his charge, Judge Sterrett said:—

* * * "As we have said in the outset, in the absence of evidence establishing a defence on one or more of the grounds presented, the plaintiffs would be entitled to your verdict; but we submit for your consideration the grounds of defence already referred to at length, viz.: 1st, that the deed of conveyance from O'Hara and wife to Fetterman and Harrison, of July 10th 1866, was fraudulent and void; and 2d, that the receipt by Mrs. O'Hara of the $2970.68 of the purchase-money mortgage, in connection with the quit-claim deed of August 25th 1869, operate either as an estoppel or confirmation of the defendants' title.

"If you find for the defendants on either of these grounds, you will state, as part of your verdict, on which of them you find. If you find for the defendants on all of the grounds of defence presented and submitted to you, you will say in your verdict that you so find. We wish you to pass upon each ground of defence submitted to you, and return your verdict in such form as to show upon what it is based."

The jury returned a verdict for the defendants on each of the grounds submitted by the court.

The plaintiffs took a writ of error, and assigned the instructions of the court for error.

M. A. Woodward (with whom were C. S. Ammond and J. Barton), for plaintiffs in error.

*M. W. Acheson,* (with whom were *J. M. Kennedy* and *D. D. Bruce*), for defendants in error.

The opinion of the court was delivered, November 22d 1872, by
SHARSWOOD, J.—A careful consideration of the voluminous record and paper-books in this case has brought us to the conclusion that it all depends upon the solution of a single question, which is whether there was any evidence which ought to have been submitted to the jury of a resulting trust, within the exceptions contained in the Statute of Frauds, in favor of Mrs. O'Hara prior to the execution of the deed of July 10th 1866, by Michael O'Hara to William Harrison and G. L. B. Fetterman in trust for her use ? The verdict of the jury establishes that the deed just mentioned was fraudulent and void as against the creditors of Michael O'Hara, and we see no reason to doubt that there was evidence in the cause which made that proper for the determination of that tribunal. If, however, there was such a resulting trust as could have been enforced consistently with the provisions of the statute against Mr. O'Hara, before the date of that deed, the evidence should certainly have been submitted to the jury ; for it is very clear that if found by them it was not open to the attack of the creditors. It may be conceded that the deed being upon record, the defendants, deriving title from the assignees in bankruptcy, could not set up the defence that they were bonâ fide purchasers for value without notice ; for the record of the deed was sufficient to put them upon inquiry as to whatever facts might exist to sustain it as a valid conveyance, and was therefore notice of such facts. They knew they must defeat that deed, and must be prepared to meet whatever would be available to disprove the allegation of fraud, and show it to be fair and honest. It may also be conceded that if the deed of trust for the separate use of Mrs. O'Hara could be sustained, her subsequent deed and release were ineffectual to pass her title under the decision of Lancaster *v.* Dolan, 1 Rawle 231, Thomas *v.* Folwell, 2 Whart. 11, and the other cases which have followed their lead.

The question being, as we have stated it, whether there was such a resulting trust as could have been enforced against Mrs. O'Hara independently of the deed of July 10th 1866, the evidence must be such as, if believed by the jury, ought to satisfy the conscience of the judge sitting as a chancellor. This is so well settled and familiar a principle of our jurisprudence that it is no longer necessary to cite the authorities for it.

Mr. O'Hara became the purchaser at a sale under an order of the Orphans' Court made by William Harrison as guardian of his wife and her two sisters, the children of John McFarland, deceased. The purchase-money was fourteen thousand four hundred and thirty-seven dollars and fifty cents. His bond and mortgage of

the premises were taken for twelve thousand four hundred and forty-seven dollars and ninety-two cents, and for the hand-money, two thousand four hundred and eighty-nine dollars and fifty-eight cents, his judgment-note. These amounts were all subsequently discharged : the hand-money from the proceeds of sale of other property of Mr. O'Hara, and the mortgage by the purchasers of the land in question from his assignees in bankruptcy, who bought subject to it. No part of the purchase-money was paid by Mrs. O'Hara, but she received her share of the mortgage from the hands of the purchasers. There certainly was in no sense any actual payment by her which could raise a resulting trust. Nor was there any fraud within the sense of the decisions. Had Mr. O'Hara refused to convey according to his promise, it would be a mere breach of a parol agreement, which has been uniformly held not to create a trust within the exception of the statute : Jackman *v.* Ringland, 4 W. & S. 149 ; Barnet *v.* Dougherty, 8 Casey 371. The testimony of the witnesses certainly establishes that it was the understanding of the family that he was buying for his wife, and that he promised that " he would buy it for Mrs. O'Hara and keep it so that it would not go out of the family while she lived." It is possible that in consequence of this promise the family made no opposition to his purchase, and he may have acquired the property at a less price than he would otherwise have been obliged to pay. It is sufficient to refer to Nixon's Appeal, 13 P. F. Smith 279, to show that this was not sufficient to create a trust *ex maleficio.* The circumstances of that case are much stronger in these respects than the one in hand. It is true that if a man procures a title from another which he could not have obtained except by a confidence reposed in him, if he abuse that confidence he is converted into trustee *ex maleficio,* as in Seichrist's Appeal, 16 P. F. Smith 237. There is no evidence of any such breach of confidence on the part of Mr. O'Hara. He meant to perform his promise, and he did perform it, but unfortunately he was in such circumstances that according to the finding of the jury his performance of the parol promise was in law a fraud on his creditors. As his mere parol promise could not raise a trust in favor of his wife, it ought not to prevail against the superior claims of his just creditors. It has been urged, however, and this is indeed the pinch of the case, that the evidence was sufficient to show that his purchase was under a family arrangement for the partition of Mr. McFarland's estate among his three daughters, and that in point of fact this land was taken by Mr. O'Hara either in whole or in part on account of his wife's share. It may be that if this had been clearly and distinctly proved it would have saved her title. But the evidence relied on as tending to show this was so vague and indefinite as clearly not to fall within the strict rule established as to the proof of resulting trusts. Mrs. Barr (one of

[O'Hara *v.* Dilworth.]

the daughters) says, "it was understood that it was sold as part of her (Mrs. O'Hara's) share." Mrs. O'Hara testified, "Both my sisters gave it up to me to be a home for me ;" and Mr. Harrison, the guardian, said, "When I sold the property the understanding was among them that Mrs. O'Hara was to have that part of the hill, and Mrs. Barr the other, where Dr. Barr's house now is." There was no evidence of any partition of Mr. McFarland's estate, and of course none of any deduction from Mrs. O'Hara's just share of the residue in consequence of the conveyance of this land to her husband. There was no evidence that Mrs. Barr had a similar advantage conceded to her, and certainly none as to the other sister. There was no mutuality in the arrangement so far as appears. Supposing it proved, what would be the interest of Mrs. O'Hara in this land? In justice and equity nothing beyond what it should appear to have been worth more than the sum at which it was bid off at the sale. As to that the evidence is equally vague and indefinite, and indeed from Mr. O'Hara's own testimony it may well be doubted whether he gave any less for the property than its fair market value at the time of the sale. No chancellor upon a bill for the partition of the remaining property of Mr. McFarland would have allowed any weight to such testimony as this to reduce the equal share of Mrs. O'Hara. The conclusion is that no resulting trust was made out, and the learned judge was perfectly right in not submitting the question to the jury.

Judgment affirmed.